UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

UNITED STATES OF AMERICA

      Plaintiff,

      v.

$128,915.00 U.S. CURRENCY,

      Defendant.

AND IN THE INTEREST OF:
CHRISTOPHER COOK, Claimant

Case No. 3:20-cv-00667-JPG

**MEMORANDUM AND ORDER**

This matter comes before the Court on two motions: Claimant Christopher Cook's ("Cook" or "Claimant") motion in limine (Doc. 35) and Claimant's motion to suppress evidence (Doc. 40). Plaintiff United States ("Plaintiff" or "Government") filed a response in opposition to the motion in limine (Doc. 36) and to the motion to suppress evidence (Doc. 41). Additionally, the Court provided leave for Claimant to file a reply and for Plaintiff to file a sur-reply (Docs. 46 and 47).

    **I.**    **Background**

This is a forfeiture case brought forth under 21 U.S.C. § 881(a)(6). In February 2020, two task-force officers with the drug enforcement agency ("DEA") observed Cook driving along Interstate-70 in Illinois. (Thebeau Decl. at 1, Doc. 1-1). He was in a white car that "was extremely dirty . . . ." *Id*. He was also driving with "the driver's side rear window . . . partially down," which the officers thought "was suspicious due to the outside temperature being approximately 30 degrees." *Id*. The officers followed him and noticed that he was tailgating the car in front of him. *Id*. They also noticed that he "had a material obstruction in the front

windshield, which appeared to be a bracket for holding a cell phone or a GPS system." *Id*. at 1-2. Then they "observed the vehicle travel over the white fog line." *Id*. at 2. Based on these traffic violations (i.e., tailgating, obstructed view, and improper lane usage), the "[o]fficers determined that there was sufficient probable cause to conduct a traffic stop . . . ." *Id*.

When the officers approached, Cook "rolled down all four windows of the vehicle." *Id*. The officers thought that he "was attempting to air out the vehicle from possible drug odor or a masking agent odor." *Id*. Cook then handed over his driver's license, and the officers learned that he was from California. *Id*. He clarified that he was actually "a student in Utah" but was originally from California. *Id*. He said that his grandmother recently moved to Indiana and left some of her belongings in California, so he went to Indiana to deliver those items and help her move. *Id*. at 2-3. The officers found that story suspicious because "there were not any current holidays which would explain why Cook may be on a school break." *Id*.

Other circumstances raised alarms to the officers. They found it suspicious that Cook never rolled his windows up despite the winter weather. *Id*. at 3. Cook also looked "visibly nervous," evidenced by shaky hands and constricted pupils. *Id*. Moreover, they "observed in plain view, two large duffle bags laying flat in the rear area of the vehicle." *Id*. In their experience, bags like these are commonly used "to transport large quantities of illegal drugs." *Id*. One officer also "observed a bottle of Ozium air sanitizer, which [he] believed was being used to possibly mask a drug odor." *Id*. Then, after looking up the vehicle's license plate, the officers discovered that Cook did not own the car—it belonged to Lisa Cook. *Id*. From the officers' perspective, "drug traffickers utilize third party vehicles in an attempt [to] not have the vehicle seized if caught by law enforcement transporting illegal drugs." *Id*. Finally, one officer "Googled Cook's address" and learned that his hometown in California is "near the Emerald Triangle,"

which "is known for growing the largest amount of cannabis in the United States." *Id*.

After the officers "completed their enforcement action" and gave Cook back his driver's license, they informed him that they "were going to detain his vehicle until a K-9 arrived, because [they] believed Cook may be involved in illegal activity." *Id*. at 3-4. They asked him whether "he had anything illegal in the car and Cook advised he did not." *Id*. at 4. But about 15 minutes later, (Gov't Resp. at 6; Cook Decl. at 1, Doc. 22-1), the K-9 arrived and "gave a positive indication . . . for the odor of narcotics." (Thebeau Decl. at 4). Again, the officers asked Cook whether "there was any type of illegal drugs in the vehicle. Cook advised he had 'pot' in the center console area and "also admitted that he had approximately $120,000 in United States currency in the vehicle." *Id*. The officers told him that they "had probable cause to search his vehicle" and indeed "located three glass jars in the center console containing a green leafy substance, which according to the jars['] labeling contained cannabis." *Id*. The two large duffel bags previously observed—Revelry brand—were practically empty but emanated "a strong odor of raw cannabis." *Id*. One bag, however, contained "several large storage Ziploc bags." *Id*. According to the officers, "Revelry bags are commonly used to traffic illegal drugs, due to their odor absorbing technology." *Id*. They also found "a glass smoking pipe with suspected burnt marijuana residue located in the center console." *Id*. Finally, the officers inspected "a large gray Nike duffle bag" and found "several rubber banded bundles of United States currency" beneath some clothes. *Id*.

Based on these suspicious findings, the officers seized the money. *Id*. Task Force Officer ("TFO") read him his *Miranda* rights. (Doc. 40-1 at 6). One officer asked Cook whether he wanted to say a few words "concerning the contents of his vehicle and Cook responded, 'I can't, they will kill me.' " (Thebeau Decl. at 5). The officer then "asked Cook if all the currency . . .

belonged to him and Cook said that it did." *Id*. The officers then took Cook and his vehicle to the DEA office in Fairview Heights, Illinois where they read his *Miranda* rights again. Cook indicated he did not want to speak to officers without his attorney present. Cook refused to consent to a search of his cell phone. *Id*.

On July 8, 2020, the Plaintiff filed this action pursuant 21 U.S.C. § 881(a)(6) regarding the $128,915 in currency as proceeds as a drug offense.

On July 13, 2020, two individuals named Daniel Cook and Ronald Brown, one of which is the Claimant's brother, Daniel Cook, were arrested in Indianapolis for marijuana-related offenses. These individuals were arrested at Daniel Cook and Claimants grandmother's residence in Indianapolis.

## II.     Law & Analysis

Civil forfeiture proceedings are governed by statute, by the Federal Rules of Civil Procedure, and by the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions (the latter referred to in this Order simply as "Supplemental Rules"). Certain property is subject to forfeiture by the United States, pursuant to 21 U.S.C. § 881. The United States Attorney General may elect to seek criminal forfeiture under 18 U.S.C. § 982 or civil forfeiture under 18 U.SC. § 983. *See United States v. $133,420 in U.S. Currency*, 672 F.3d 629, 634 (9th Cir. 2012).

Criminal forfeitures operate *in personam* against the defendant and serve as a penalty upon conviction. By contrast, civil forfeitures operate *in rem* against the property itself, "under the theory that the property is guilty of wrongdoing." *See United States v. Duboc*, 694 F.3d 1223, 1228 (11th Cir. 2012). In a civil forfeiture proceeding, the property owner's culpability is not considered in determining whether the property should be forfeited. *See United States v. Cherry*,

330 F.3d 658, 668 n. 16 (4th Cir. 2003); *Vereda, Ltda. v. United States*, 271 F.3d 1367 (Fed. Cir. 2001). While a conviction is necessary to uphold a criminal forfeiture, conviction is irrelevant in a civil forfeiture proceeding. *United States v. One Piper Aztec F De Lux Model 250 PA 23 Aircraft*, 321 F.3d 355 (3d Cir. 2003); 3 Crim. Prac. Manual § 107.4 (2012).

In a civil forfeiture proceeding, the government bears the burden of establishing by a preponderance of the evidence that the property is subject to forfeiture. If the government's theory is that the property was used to commit or facilitate the commission of a criminal offense, the government must establish that there was a substantial connection between the property and the offense. *United States v. Funds in Amount of Thirty Thousand Six Hundred Seventy Dollars*, 403 F.3d 448, 454 (7th Cir. 2005) (internal citations omitted). A claimant's "cash hoard may be subject to forfeiture if the currency at issue represents the proceeds of an illegal drug transaction or was intended to facilitate such a transaction." *Id*. at 454.

a. **First Motion in Limine**

Claimant first moves to exclude, pursuant to Rule 401, 403, and 404, evidence that Claimant's brother, Daniel Cook, was arrested on July 13, 2020, with 100 pounds of marijuana. Claimant argues that such evidence has no probative value to the seizure of Christopher's Cook's money five months prior. (Doc. 35 at 3). The Government argues that this evidence is not offered to show Christopher Cook is a drug trafficker but to show the "character of the seized cash as drug money." (Doc. 36 at 2). Specifically, the Government argues that the arrest of Daniel Cook and Christopher Cook are connected because they were carrying the same "Revelry bags," the property Ronald Brown retained the same lawyer for the defense of his criminal case as Claimant, Claimant stated he was leaving his grandmother's house in Indianapolis (the same property where Ronald Brown and Daniel Cook were arrested) when he was stopped on I-70

with the seized property.

The Court will take each of these arguments in turn. First, Claimant argues the evidence is irrelevant and therefore inadmissible under Rule 401. Rule 401 defines relevant evidence as that which "has any tendency to make a fact more or less probable than it would be without the evidence; and…the fact is of consequence in determining the action. A district court has "wide discretion" when it rules on the admission of evidence. *United States v. Boros*, 668 F.3d 901, 907 (7th Cir. 2012) (internal citations omitted). Additionally, there is a "low threshold" for establishing evidence is relevant. *Id*. (internal citations omitted). The Court agrees with the Government that this evidence meets the low threshold of relevancy of Rule 401. Specifically, the Court understand the types of bags from the arrests were the same, the property in Indianapolis is connected to Claimant's case, and there is other evidence from the July 13, 2020 arrest that demonstrates connection between the forfeited property and a criminal offense.

Next, Claimant argues Rule 403 bars evidence because the probative value of evidence of the arrest of Daniel Cook and Ronald Brown is outweighed by the potential for unfair prejudice, confusion, and delay. Rule 403 permits a district court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of ... unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting of time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Recognizing that " 'most relevant evidence is, by its very nature, prejudicial,' the Seventh Circuit Court of Appeals has emphasized that evidence must be unfairly prejudicial to require exclusion." *United States v. Hanna*, 630 F.3d 505, 511 (7th Cir. 2010). "[T]he more probative the evidence, the more the court will tolerate some risk of prejudice, while less probative evidence will be received only if the risk of prejudice is more remote." *United States v. Vargas*, 552 F.3d 550, 557 (7th Cir. 2008). The Court finds evidence of Daniel

Cook and Ronald Brown's arrest is more prejudicial than probative in the instant case. Daniel Cook and Ronald Brown's arrest occurred more than five months *after* Claimant's seizure, and after the Government filed this civil forfeiture action in federal court. Additionally, the Court believes that this evidence will mislead the jury. Specifically, the Court agrees with Claimant that the jury would essentially hear a "trial within a trial" where a jury would unfairly intertwine the arrest of Daniel Cook and Ronald Brown with the government's burden to prove the seized currency is substantially related to narcotics. The Court will bar any evidence related to the arrest and marijuana possession of Daniel Cook and Ronald Brown in the instant case.

Last, Claimant suggests evidence of Daniel Cook's drug possession is inadmissible propensity under Rule 404(b)(1). Because the Court will grant Claimant's motion to limit this evidence under Rule 403, the Court does not need to consider this argument.

The Court **GRANTS** Claimant's Motion in Limine (Doc. 35).

### b. Second Motion to Suppress/Motion in Limine

Next, Claimant requests to limit Cook's statement to police stating, "I can't, they will kill me." (Doc. 40). After finding marijuana in Claimant's car, an officer asked if Claimant wanted to speak about the "contents of his vehicle." Claimant responded that "I can't, they will kill me." Claimant argues that this statement should be suppressed because he invoked his Fifth Amendment right to silence. Additionally, Claimant wishes to prohibit the Government from noting he refused to answer questions. Third, Claimant wishes to exclude evidence of his refusal to permit law enforcement officers to search his cell phone.

Claimant cites a number of cases in support of its contention to suppress. The Government responds and states that Claimant's points would have been well taken, if this were a criminal case. However, Fifth Amendment, the underpinning of the *Miranda* requirements, are

not applicable to civil litigation. The Court agrees with the Government. The caselaw is clear –

evidence of a witness's assertion of the Fifth Amendment may be presented to a jury in a civil

case. "[T]he results of interrogation without *Miranda* warnings are admissible in civil cases."

*Hanson v. Dane Cnty.*, 608 F.3d 335, 339 (7th Cir. 2010) (citing *Baxter v. Palmigiano*, 425 U.S.

308, 315, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976)); *see also, e.g., United States v. $107,840*, 784

F.Supp.2d 1109, 1118–19 (S.D.Iowa 2011) ("[C]ivil forfeitures conducted pursuant to 21 U.S.C.

§ 881 are considered civil cases for the purpose of the Fifth Amendment's Self–Incrimination

Clause"); *United States v. Funds in the Amount of One Hundred Thousand & One Hundred*

*Twenty Dollars ($100,120.00)*, 127 F. Supp. 3d 879, 892 (N.D. Ill. 2015); *United States v. Funds*

*in Amount of $239,400*, 2012 WL 2007025, at *6 (N.D. Ill. June 5, 2012) ( "[t]he Fifth

Amendment's Self–Incrimination Clause is not implicated in this case because…the Government

is not using any of [defendant's] statements against him in a criminal trial").

Claimant's cited cases are inapplicable to the instant civil forfeiture proceeding. *Doyle V.*

*Ohio*, 426 U.S. 610, 618 48 L.Ed.2d 91 (1976) (holding defendant's post-*Miranda* silence could

not be used against him in criminal prosecution); *Smith v. Cadagin*, 902 F.2d 553 (7th Cir.

1990)(reversing conviction of defendant in criminal case where prosecutor attempted to exploit

defendant's silence as violation condemned in *Doyle*); *Bobo v. Kolb*, 969 F.2d 391 (7th Cir.

1992)(finding police fulfilled *Miranda*'s requirement by re-reading *Miranda* rights after a

number of hours during interrogation); *U.S. v. Jumper*, 497 F.3d 699 (7th Cir. 2007) (finding

district court abused discretion by allowing evidence of videotaped interrogation where

defendant invoked right to remain silent in criminal prosecution).

The Court later allowed leave for Claimant to provide this Court additional authority in

support of his motion and allowed the Government additional time to file a sur-reply. Claimant

indicated that *Lefkowitz v Cunningham*, 431U.S. 801 (1977), contradicts the Government's contention that "privilege is only available in criminal cases." (Doc. 46 at 4). In *Lefkowitz*, the Supreme Court held a state statute, under which an attorney was divested of his state political party office and barred for five years from holding public office because he refused to waive his Fifth Amendment privilege, was violative of plaintiff's Fifth Amendment's right to be free of compelled self-incrimination. *Id*. This case is inapplicable and does not delve into the issue of whether assertion of *Miranda* Fifth Amendment rights may be presented in civil trials.

The Court agrees that *Lefkowitz* states "the touchstone Fifth Amendment is compulsion, and direct economic sanctions and imprisonment are not the only penalties capable of forcing the self-incrimination which the Amendment forbids." *Id.* at 806. However, the Supreme Court evaluated coercive consequences of a state statute in New York requiring public employees to waive immunity from prosecution and give self-incriminating testimony. A similar issue is not presented here. This case is not on point and inapplicable to the case at hand.

Here, Claimant is not facing a criminal prosecution. If the Government were prosecuting Claimant in a criminal case, any evidence or cross-examination that Christopher Cook asserted any Fifth Amendment rights would be prohibited.

Claimant ends his reply that "Cook concedes that the cases he cites are not directly on point with these facts. Counsel has been unable to find a case directly on point." (Doc. 46 at 5). The Court agrees and will side with clear and binding authority from the Supreme Court of the United States and the Seventh Circuit Court of Appeals holding that assertion of Fifth Amendment rights are admissible in civil cases, including the case at bar.

The following statements are *not* excluded based on Claimant's invocation of his Fifth Amendment *Miranda* rights to remain silent:

- The statement "I can't, they will kill me"; and

- Evidence Claimant refused to allow a search of his cell phone.

**III.     Conclusion**

The Court hereby:

- **GRANTS** Claimant's Motion in Limine (Doc. 35).

- **DENIES** Claimant's Second Motion in Limine (Doc. 40).


**IT IS SO ORDERED.**
**DATED:  August 4, 2022**

<div style="margin-left:40%">

**/s/   J. Phil Gilbert_____**
**J. PHIL GILBERT**
**U.S. DISTRICT JUDGE**

</div>